TERRY L. LARSEN AND JANICE M. LARSEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Larsen v. Commissioner
Docket No. 3314-81.
United States Tax Court
T.C. Memo 1982-320; 1982 Tax Ct. Memo LEXIS 420; 44 T.C.M. (CCH) 74; T.C.M. (RIA) 82320; June 9, 1982. *420 Held: (1) Petitioners have failed to show that the $ 3,100 they paid, for materials from Educational Scientific Publishers and for instruction in the use of such materials, qualifies for deduction under any of the paragraphs of section 212, I.R.C. 1954. (2) Petitioners have failed to show that the Johnson Mutual Benefit Association is an eligible donee, for charitable contribution deduction purposes, under section 170(c), I.R.C. 1954. Terry L. Larsen and Janice M. Larsen, pro se. Ellen T. Friberg, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1977 in the amount of $ 2,270. After settlement of other issues, the issues for decision are: (1) Whether petitioners are entitled to deduct under section 212[1] $ 3,100 for materials and instruction relating to the establishment of a family trust; and (2) Whether petitioners are entitled to deduct under section 170 $ 38.40 paid as membership dues to the Johnson Mutual Benefit *421 Association. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorproated herein by this reference. When the petition in this case was filed, petitioners Terry L. Larsen (hereinafter sometimes referred to as "Terry") and Janice M. Larsen (hereinafter sometimes referred to as "Janice") resided in Racine, Wisconsin. On or about March 24, 1977, petitioners paid $ 3,100 to Trudy McKenzie [2] (hereinafter sometimes referred to as "McKenzie"). In exchange, McKenzie gave petitioners materials from Educational Scientific Publishers (hereinafter sometimes referred to as "the ESP materials") and spent several days teaching petitioners how to use the ESP materials to establish the Terry L. Larsen Equity Trust (hereinafter sometimes referred to as "the Trust"). The ESP materials include a declaration of trust, preprinted trust minutes and forms, other printed materials, and information regarding the assignment of income and property to a trust. Petitioners used the ESP materials to create the Trust in 1977; they assigned their home to the Trust. The purchase of the *422 ESP materials and McKenzie's instructions did not include any agreement that McKenzie would prepare income tax returns for petitioners. On their Federal income tax return for 1977, petitioners reported wage and salary income (shown on Forms W-2), totalling $ 26,038.84, and other income--consultant fees from the Trust (shown on Forms 1099-Misc.), totaling $ 3,410.54. They reported no income from any other source. They claimed an "above-the-line" deduction for "payments * * * of nominee income" to the Trust, totalling $ 14,010.05. They claimed itemized deductions for taxes, interest expense, and $ 2,500 for "estate planning materials to maintain + conserve assets". Subsequently, petitioners filed a Form 1040X amended tax return for 1977. On this form, they eliminated the $ 3,410.54 income and the $ 14,010.05 deduction; they also replaced the $ 2,500 "estate planning" deduction with a $ 3,100 deduction for "educational trust". In 1977, Terry was employed by S.C. Johnson & Son, Inc. (hereinafter sometimes referred to as "Johnson's Wax"). The Johnson Mutual Benefit Association (hereinafter sometimes referred to as "JMBA") was composed only of employees of Johnson's Wax. JMBA provided *423 services to its members (such as Christmas parties, flowers for sick members or their families, and flowers for funerals), and lent money to its members. During 1977, Terry paid $ 38.40 as membership dues to JMBA, by way of deductions from his weekly salary from Johnson's Wax. On their tax return for 1977, petitioners did not claim any charitable contributions deductions. On their Form 1040X for 1977, petitioners claimed a charitable contribution deduction for "JMBA Dues", totalling $ 38.40. OPINION I. ESP Materials
Petitioners maintain that, under section 212[3] *424 , they are entitled to deduct $ 3,100 for the ESP materials and McKenzie's instruction. They do not argue that the Trust is a separate entity for tax purposes. [4] Respondent asserts that petitioners' claimed deduction does not qualify under section 212 and in any event its deduction is disallowed under section 262. [5] We agree with respondent. [6]
In a pretrial conference, petitioners were directed to this Court's opinion in Contini v. Commissioner,76 T.C. 447 (1981); it was pointed *425 out that petitioners had the burden of showing that their expenditures were made for one or more of the purposes listed in section 212. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioners offered into evidence one page of the minutes portion of the ESP materials. Respondent objected to admission of the page on the ground that it did not illustrate typical minutes and that all the minutes should be put into the record. The Court sustained respondent's objection, asserting that petitioners would not be permitted to exercise unilateral selectivity out of related materials. See Fed. R. Evid. 106. [7] *426 Petitioners thereupon chose to not put the ESP materials into evidence, even though all the trustees of the Trust (and apparently all the ESP materials) were in the courtroom. See Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (CA10 1947). Paragraph (1) of section 212 deals with the production or collection of income. Petitioners reported only wage and salary income on their 1977 tax return, except for their backing and filling as to consultant fees from the Trust. No evidence in the record links either the ESP materials or McKenzie's instructions to the production or collection of petitioners' income. Paragraph (2) of section 212 deals with the management, conservation, or maintenance of property held for the production of income. We know only of petitioners' residence having been transferred to the Trust. Terry testified that his brother lived in an apartment in petitioners' residence. There was no testimony that the brother paid rent, or even that he was going to pay rent. Petitioners did not report on their tax return any income from this source, nor did they deduct any expenses. The record does not indicate that petitioners held any property for the production of income, nor does it show that any such property was being acquired or they were even investigating this possibility. Paragraph (3) of section 212 deals with the determination, *427 collection, or refund of any tax. The record does not show that either the ESP materials or McKenzie's instructions were as to the determination, collection, or refund of any tax. To the extent that the record shows anything with clarity on this subject, it is that a trust was established and petitioners' residence was transferred to it; this suggests that the expenditures were capital (not ordinary and necessary expenses) and were personal (hence, described in sec. 262 and not sec. 212). In short, petitioners have totally failed to carry their burden of proof. Epp v. Commissioner, 78 T.C.     (May 12, 1982); Contini v. Commissioner,supra.
We conclude that petitioners have failed to show that any part of the $ 3,100 is deductible. Cf. Merians v. Commissioner,60 T.C. 187 (1973). Petitioners point out that, with McKenzie's help, they prepared and filed the following documents: affidavit of Terry, affidavit of Janice, quitclaim deed from Janice to Terry, bill of sale, quitclaim deed from Terry to the Trust, and trust indenture. Petitioners maintain that "[t]he question was whether or not the $ 3100.00 was a reasonable fee for setting up a trust." They assert that a lawyer might *428 have charged them $ 5,000. Petitioners err. No deduction is allowed for an expenditure merely on a showing that the expenditure was "for setting up a trust." Petitioners have failed to supply the missing links between the Trust and any of the paragraphs of section 212; they have failed to show that the $ 3,100 expenditure was an ordinary and necessary expense rather than a capital expenditure; and they have failed to show that the expenditure was not for the sort of personal purposes that would cause disallowance under section 262. We need not express a view as to whether what petitioners received was worth what they paid. We hold for respondent on this issue. II. JMBA Dues
Petitioners maintain that they are entitled to deduct Terry's JMBA dues under section 170. They assert that they paid more to JMBA than they received from it. Respondent contends that petitioners have failed to show (1) that JMBA was an eligible donee and (2) that petitioners did not receive some benefit from their contributions. We agree with respondent's first contention. Section 170 authorizes taxpayers to deduct charitable contributions. Subsection (c) of section 170 defines "charitable contribution" *429 as a contribution or gift to or for the use of an entity of the type described in one or another of the paragraphs in the subsection. We assume petitioners' position is that JMBA is an organization described in section 170(c)(2), [8] *430 that is, a "charity". [9]
Petitioners have not presented information from which we can conclude that JMBA meets each of the requirements for qualification under section 170(c)(2). Welch v. Helvering,supra.
We hold for respondent on this issue.
Because of the parties' settlement of other issues, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. See Hoelzer v. Commissioner, T.C. Memo. 1982-6↩ [¶82,006 P-H Memo TC].
3. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax. ↩
4. Petitioners' tax return for 1977 treated the Trust as a separate entity. Petitioners Form 1040X explained their change of position as follows: I was originally going to file a trust tax return along with my personal Return. As I have found this may be illegal I have decided to file a straight return. The trust never made any money in its own name. The money in the trust checking account was placed there through the company I work for. See, e.g., Vnuk v. Commissioner,621 F.2d 1318 (CA8 1980), affg. T.C. Memo. 1979-164↩. 5. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
6. Respondent raises some doubt as to whether the $ 3,100 had in fact been paid. On the basis of the record, we have found that petitioners paid $ 3,100 in exchange for the ESP materials and McKenzie's instruction.↩
7. Rule 106. Remainder of or Related Writings or Recorded Statements When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.
8. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B). ↩
9. Thus, we assume that petitioners do not contend that Terry's contributions qualify under any of the other paragraphs of section 170(c)↩, dealing with certain types of governments, veterans' organizations, fraternal societies, and cemetery companies.